## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Jahinnslerth Orozco,
1265 Newton Street, NE
Washington, DC 20017

                      Plaintiff,

        v.

Today's Bus, Inc.
610 I Street NW
Washington, DC 20001

and

Dong Jia Yong, President
in his official capacity
Today's Bus, Inc.
610 I Street NW
Washington, DC 20001

and

Ming Yu, Manager
in his official capacity
Today's Bus, Inc.
13 Allen Street
New York, NY 10002

and

Wilcar Tours, Inc.
1107 Sweet Gale Drive
Durham, NC 27704

and

William Ruiz, President
in his official capacity
Wilcar Tours, Inc.
81-14 Baxter Avenue, #5G
Jackson Heights, NY 11373

                      Defendants.

CASE NUMBER  1:07CV00444

JUDGE: Emmet G. Sullivan

DECK TYPE: Civil Rights (non-employmen

DATE STAMP: 03/07/2007

**Jury Trial Demand**

## COMPLAINT

## I. INTRODUCTION

This is an action seeking injunctive relief and damages for violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* (hereinafter "ADA"), and its implementing regulations, and the D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq.* (hereinafter "DCHRA"). Defendants – Today's Bus, Inc., an interstate passenger bus service, its managers and officials, and Wilcar Tours, Inc., an interstate passenger carrier – illegally barred and ultimately segregated Plaintiff Jahinnslerth (Joe) Orozco, a blind young man, forcing him to sit at the back of the bus with his service animal. In blatant violation of the ADA and the DCHRA, Defendants twice refused to accommodate Mr. Orozco's requests to travel with his service animal, based on their policy that explicitly discriminates against people with disabilities by prohibiting all animals from bus travel without exception. By their actions, Defendants subjected Mr. Orozco to substantial travel delays, harassment, and humiliation.

As an AmeriCorps volunteer who frequently travels outside of the District of Columbia, Mr. Orozco, accompanied by his service animal, has an ongoing need to use Today's Bus for interstate transportation. Mr. Orozco's efforts to urge Defendants to change their unlawful discriminatory policy and practice have been unsuccessful. Consequently, he seeks injunctive relief from this Court, as well as damages, attorneys' fees and costs.

## II. JURISDICTION AND VENUE

1.     This Court has jurisdiction over the federal statutory claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's claims arising under District of Columbia law pursuant to 28 U.S.C. § 1367.

2.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Columbia.

2

## III. PARTIES

3.      Plaintiff Jahinnslerth (Joe) Orozco is a resident of the District of Columbia.  Mr.

Orozco is a 24-year-old man who has been blind since the age of two.  He is substantially

impaired in a major life activity and thus is a person with a disability as defined by the ADA.  42

U.S.C. § 12102(2)(A).  Mr. Orozco uses a dog as a service animal on a daily basis to move about

the city safely and independently.   Mr. Orozco has relied on Gator, a trained German shepherd,

as his loyal service animal since July 2004.  Gator was formally trained and certified by The

Seeing Eye, Inc. as a guide dog to assist people with visual disabilities.  Following Gator's

training, Mr. Orozco received a certificate affirming Gator's qualifications as a Seeing Eye dog.

Mr. Orozco's dog is therefore properly characterized as a service animal, which is defined under

the ADA to include "any guide dog, signal dog, or other animal individually trained to work or

perform tasks for an individual with a disability, including, but not limited to, guiding

individuals with impaired vision[.]"  49 C.F.R. § 37.3; 28 C.F.R. § 36.104.

4.      Defendant Today's Bus, Inc. is a corporation formed under the laws of the State

of New York for the purpose of providing interstate bus transportation.  The corporation's office

in Washington, D.C. is located at 610 I Street, NW.  Today's Bus owns, leases (or leases to), or

operates a "travel service" (42 U.S.C. § 12181(7)(F)) and a "terminal, depot, or other station

used for specified public transportation" (42 U.S.C. § 12181(7)(G)), and thus is a public

accommodation under Title III of the ADA and implementing regulations promulgated by the

U.S. Department of Justice (DOJ).  42 U.S.C. § 12181(7); 28 C.F.R. Pt. 36.  Today's Bus is a

private entity, primarily engaged in the business of transporting people, whose operations affect

commerce, that provides "specified public transportation" services under 42 U.S.C. §

12181(10)[1], and thus is subject to 42 U.S.C. § 12184 and implementing regulations promulgated by the U.S. Department of Transportation (DOT).  42 U.S.C. § 12184(a); 49 C.F.R. Pt. 37.

5.    Today's Bus provides "public conveyances operated on land … as well as the stations and terminals thereof," and "travel or tour advisory services" and thus operates a place of public accommodation under the DCHRA.  D.C. Code § 2-1401.02(24).

6.    Defendant Dong Jia Yong is the President and sole officer of Today's Bus. According to the corporate registration of Today's Bus filed by Mr. Yong with the D.C. Department of Consumer and Regulatory Affairs, Mr. Yong is a "Bona fide Resident of the District of Columbia" and the resident agent for Today's Bus, with his address at 610 I Street NW, Washington, DC 20001.  As the President of Today's Bus, Mr. Yong operates Today's Bus, is responsible for the company's discriminatory policy regarding service animals, and has the authority to implement corrective action.

7.    Defendant Ming Yu is a manager of the daily operations of Today's Bus.  Based on information and belief, he works in the company's business office at 13 Allen Street, New York, NY 10002.  As a manager, Mr. Yu is responsible for the company's discriminatory policy regarding service animals and has the authority to implement corrective action.

8.    Defendant Wilcar Tours, Inc. (Wilcar Tours) is a private entity that owns and operates buses providing passenger transportation services in the District of Columbia and other states.  Wilcar Tours is registered with the U.S. Department of Transportation under USDOT # 1508944 and operates as an interstate motor common carrier of passengers under MC # 565760. Wilcar Tours is "a private entity that owns, leases (or leases to), or operates a place of public accommodation," and thus is a public accommodation under the DOJ regulations implementing

---

[1] The ADA defines "specified public transportation" as "transportation by bus, rail, or any other conveyance (other than by aircraft) that provides the general public with general or special service (including charter service) on a regular and continuing basis."  42 U.S.C. § 12181(10); 49 C.F.R. § 37.3.

Title III of the ADA.  28 C.F.R. § 36.104.  Wilcar Tours is a private entity, primarily engaged in the business of transporting people, whose operations affect commerce, that provides "specified public transportation" services under 42 U.S.C. § 12181(10), and thus is subject to 42 U.S.C. § 12184 and the DOT's implementing regulations.  42 U.S.C. § 12184(a); 49 C.F.R. § 37.5.

9.       Wilcar Tours provides "public conveyances operated on land" and thus operates a place of public accommodation under the DCHRA.  D.C. Code § 2-1401.02(24).  Based on information and belief, buses owned and operated by Wilcar Tours and displaying registration numbers USDOT 1508944 and MC 565760 are used by Today's Bus in its business of transporting passengers between Washington, D.C. and New York City.

10.      Defendant William Ruiz is the President of Wilcar Tours.  Based on information and belief, he resides at 81-14 Baxter Avenue, #5G, Jackson Heights, NY 11373.  As President, Mr. Ruiz is responsible for the company's discriminatory policy regarding service animals and has the authority to implement corrective action.

## IV.  FACTUAL ALLEGATIONS

11.      On December 31, 2006, Mr. Orozco, accompanied by his service animal and four traveling companions, purchased a ticket to New York City from a Today's Bus ticket agent at the 610 I Street, NW station in Washington, D.C., and attempted to board a 9:30 AM Today's Bus traveling from Washington to New York City.

12.      Even though Mr. Orozco and his traveling companions were at the front of the line to board the Today's Bus carrier, a station agent prevented Mr. Orozco from boarding the bus with his service animal.  Defendants' agents told Mr. Orozco that his only recourse was to place the dog beneath the bus along with the passengers' luggage and additional baggage.

13.    Mr. Orozco explained to Defendants' agents that he is blind, and accordingly, he needed his service animal to accompany him on the bus. He further explained that the dog is well-trained and certified as a Seeing Eye dog, and presented an identification card verifying this training and certification. Mr. Orozco requested as a reasonable accommodation under the ADA that Defendants allow his service animal to ride with him on the bus. Nevertheless, Defendants' agents refused to accommodate Mr. Orozco's request to travel with Gator on the bus, relying instead on a Today's Bus policy that excludes all dogs from the buses.

14.    Eventually, Mr. Orozco called the D.C. Metropolitan Police Department and two officers responded in person to his call. The police officers interviewed Mr. Orozco and explained to Defendants' station employees and driver that they must allow Mr. Orozco's service animal on the bus.   It was only after the police told the station employees and driver that Mr. Orozco had the right to bring Gator on the bus that Mr. Orozco was finally allowed to board the bus after a delay of approximately 45 minutes, and after all other passengers had boarded the bus and were waiting for the matter to be resolved.

15.    Defendants' discriminatory conduct in singling out Mr. Orozco and excluding him from boarding the bus with Gator occurred in front of Mr. Orozco's traveling companions and all the other bus passengers, causing him significant humiliation. Mr. Orozco continued to suffer humiliation during the four-hour trip with the same passengers who had witnessed the driver's discriminatory conduct to keep him from boarding the bus based on his disability.

16.    Before Mr. Orozco left Washington on December 31, 2006, he explained to the station agent that he would be returning from New York City with his service animal the following day on Today's Bus. Mr. Orozco requested that Defendants' agent alert Defendants' New York City station employees of the fact that Mr. Orozco had the right to travel with his

6

service animal on the bus, so that he would not experience disability-based discrimination on the return trip.

17.    In spite of Mr. Orozco's efforts to prevent a recurrence, he encountered the same discriminatory treatment by Defendants when he tried to board the 5:00 PM Today's Bus leaving New York City on January 1, 2007. Mr. Orozco entered the Today's Bus station at 13 Allen Street in New York with his service animal and purchased a ticket from the Today's Bus ticket agent to travel to Washington, D.C. Mr. Orozco and his sighted traveling companion then walked several blocks with Gator to the location where the Today's Bus carrier was waiting. There, a female Today's Bus agent was selling Today's Bus tickets curbside as well as directing passengers onto the waiting bus. This agent prevented Mr. Orozco and his service animal from boarding the bus. As a result, the bus for which he had purchased a ticket left the station without Mr. Orozco, Gator, and his companion.

18.    Mr. Orozco tried in vain to explain to the Defendants' agent that he is blind and needs his service animal to travel with him. He further explained his right to travel on the bus with his service animal, but Defendants' agent repeatedly refused to allow Mr. Orozco to board the bus with Gator. When Mr. Orozco and his companion tried to board a second bus, the female employee snatched the bus tickets from the hand of Mr. Orozco's companion and insisted on refunding the purchase price, rather than allow them to board the bus with Gator.

19.    Once Defendants barred Mr. Orozco and his service animal from boarding the bus, Mr. Orozco called the New York City Police Department via the non-emergency number and, after being routed through the 911 operator, he was told that police officers had been dispatched to the bus stop.

20.     After Mr. Orozco called for police assistance, but before the officers arrived, a male Today's Bus agent told Mr. Orozco that if he would wait, he would try to get him on the next bus to Washington, D.C., but that Mr. Orozco would have to sit at the back of the bus with Gator. Over the opposition of the female Today's Bus employee, the male employee allowed Mr. Orozco, Gator and his traveling companion to board a bus bound for Washington. Although the bus was completely empty, Mr. Orozco was forced to sit at the back of the bus with his service animal. En route to Washington, D.C., Mr. Orozco did not leave the bus when it stopped for breaks, due to a concern that Defendants would again try to stop him from boarding the bus with his service animal.

21.     Mr. Orozco's companion noted that the DOT registration numbers displayed on the door of the luggage compartment of the Today's Bus they boarded in New York City were USDOT #1508944 and MC #565760. These numbers correspond to the DOT registration numbers for Wilcar Tours. Based on information and belief, the driver of this bus was an employee of Wilcar Tours, under the direction of Defendant William Ruiz.

22.     When Mr. Orozco arrived in Washington, D.C. at approximately 11:00 PM on January 1, 2007, he attempted to lodge a complaint about his experience to Defendants' station agent on duty at 610 I Street NW. Defendants' station agent failed to respond to Mr. Orozco's concerns, would not give his name, and refused to provide any information when Mr. Orozco asked for the name and a contact telephone number for the appropriate company representative with whom Mr. Orozco could discuss his complaint. Finally, one of the drivers in the station gave Mr. Orozco a card with a telephone number for Today's Bus.

23.     On January 2, 2007, Mr. Orozco eventually reached a manager for Today's Bus by telephone who identified himself as Ming Yu. Mr. Orozco described his experiences on

8

Today's Bus and discussed his concern about the company's policy of preventing persons with service animals from boarding Today's Bus carriers. Defendant Ming Yu told Mr. Orozco that the company was within its right to refuse service to him. At no point did Mr. Yu offer any apology for Defendants' discriminatory conduct or assure Mr. Orozco that the company would modify its policy to accommodate people with disabilities traveling with service animals as required by the ADA.

24.    In both Washington and New York, it was obvious that Mr. Orozco is blind and that his dog is a service animal that assists him. The dog was in harness, on a leash, and wearing appropriate tags displaying his guide dog status. On both occasions, Mr. Orozco reiterated these obvious points to Defendants. He pointed out his blindness and presented Defendants with an identification card from The Seeing Eye training school showing that his dog is an official service animal. Mr. Orozco assured the employees that his service animal was properly trained and would ride on the bus beneath his seat without bothering any passengers. At no point did Gator bark or display any behavior that was in any way disruptive.

25.    Following Mr. Orozco's explanations to Defendants in Washington and New York City, Today's Bus employees clearly communicated to Mr. Orozco in English that the service animal would not be allowed on the bus. Defendants' employees refused to modify their prohibition against dogs in order to accommodate Mr. Orozco's disability and need for his service animal to accompany him on the bus.

26.    On January 17, 2007, in an attempt to resolve Mr. Orozco's complaint and concern about Defendants' unlawful discriminatory treatment, counsel for Plaintiff sent certified letters to Defendants Dong Jia Yong, Ming Yu, and Wilcar Tours. A response by counsel for Today's Bus essentially corroborated the company's blanket policy prohibiting animals on board

Today's Bus carriers and that Mr. Orozco was allowed on the bus in Washington, D.C. <u>only</u> because the police directed Today's Bus employees to permit Mr. Orozco to board with his service animal. Today's Bus did not offer Mr. Orozco an apology or any of Plaintiff's proposed remedies.

27.     Defendants have not addressed or resolved Mr. Orozco's concerns about their discriminatory policy, leaving Mr. Orozco no choice but to proceed with this lawsuit in order to challenge the disability-based discrimination he experienced and to prevent discrimination in the future when he attempts to use the transportation services provided by Defendants.

## V. GOVERNING STATUTORY AND REGULATORY FRAMEWORK

### A. Prohibition of Discrimination by Transportation Service Providers under the Americans with Disabilities Act (ADA)

28.     The general rule of Title III of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12181 – 12189, provides in pertinent part:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.
> 42 U.S.C. § 12182(a).

29.     The ADA definition of a "public accommodation" includes private entities that operate "a travel service" and/or "a terminal, depot, or other station used for specified public transportation," if the operations of such entities affect commerce. 42 U.S.C. § 12181(7).

30.     "[S]pecified public transportation" is defined as "transportation by bus, rail, or any other conveyance (other than aircraft) that provides the general public with general or special service (including charter service) on a regular and continuing basis." 42 U.S.C. § 12181(10).

31.    Title III of the ADA specifically prohibits disability-based discrimination by transportation service providers:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce.
> 42 U.S.C. § 12184(a).

32.    Discrimination by a public accommodation is defined to include:

> (i) the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;

> (ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

> (iii) a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]
> 42 U.S.C. § 12182(b)(2)(A).

33.    Similarly, with regard to providers of specified public transportation, Title III of the ADA defines discrimination to include:

> (1) the imposition or application by a[n] entity described in subsection (a) of this section [42 U.S.C. § 12184] of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully

enjoying the specified public transportation services provided by the entity, unless such criteria can be shown to be necessary for the provision of the services being offered;

(2) the failure of such entity to--
(A) make reasonable modifications consistent with those required under section 12182(b)(2)(A)(ii) of this title;
(B) provide auxiliary aids and services consistent with the requirements of section 12182(b)(2)(A)(iii) of this title; and
(C) remove barriers consistent with the requirements of section 12182(b)(2)(A) of this title[.]
42 U.S.C. § 12184(b)(1) & (2).

34.    In September 1991, the U.S. Department of Justice (DOJ) promulgated regulations to implement ADA Title III's general prohibition against discrimination. These regulations, codified at 28 C.F.R. Part 36, repeat verbatim the general statutory prohibitions against disability-based discrimination in the statute at 42 U.S.C. §§ 12182(a) and 12184(b)(2)(A)(ii). 28 C.F.R. §§ 36.201(a), 36.302(a).

35.    The DOJ regulations implementing Title III of the ADA provide that "a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 36.302(c)(1).

36.    With respect to specified public transportation services provided by private entities, the ADA implementing regulations promulgated by the U.S. Department of Transportation (DOT) pursuant to 42 U.S.C. § 12186(a) are codified at 49 C.F.R. Part 37, and provide in pertinent part:

§ 37.5 Nondiscrimination.
(a) No entity shall discriminate against an individual with a disability in connection with the provision of transportation service.
…/
(f) Private entities that are primarily engaged in the business of transporting people and whose operations affect commerce shall not discriminate against any individual on the basis of disability in the full and equal enjoyment of specified transportation services.

This obligation includes, with respect to the provision of transportation services, compliance with the requirements of the rules of the Department of Justice concerning eligibility criteria, making reasonable modifications, providing auxiliary aids and services, and removing barriers (28 CFR 36.301–36.306). 49 C.F.R. §§ 37.5(a) and (f).

37.     The DOT regulations implementing Title III of the ADA require that entities providing transportation service "shall permit service animals to accompany individuals with disabilities in vehicles and facilities." 49 C.F.R. § 37.167(d).

38.     In order to qualify as an accommodation for a person with a disability, a service animal must meet the following definition:

[A]ny guide dog, signal dog, or other animal individually trained to work or perform tasks for an individual with a disability, including, but not limited to, guiding individuals with impaired vision, alerting individuals with impaired hearing to intruders or sounds, providing minimal protection or rescue work, pulling a wheelchair, or fetching dropped items. 49 C.F.R. § 37.3; 28 C.F.R. § 36.104.

39.     The DOT regulations implementing Title III of the ADA require that entities providing transportation services:

shall ensure that personnel are trained to proficiency, as appropriate to their duties, so that they operate vehicles and equipment safely and properly assist and treat individuals with disabilities who use the service in a respectful and courteous way, with appropriate attention to the difference among individuals with disabilities. 49 C.F.R. § 37.173.

40.     The DOT regulations specify that it is discrimination for operators of over-the-road buses[2] to:

(a) Deny transportation to passengers with disabilities, except as provided in § 37.5(h) [of 49 C.F.R. § 37.5][3];

_____

[2] An "over-the-road bus" is defined by the ADA as "a bus characterized by an elevated passenger deck located over a baggage compartment," such as the buses used by Defendants in their transportation service. 42 U.S.C. § 12181(5).

.../
(c)  Require or request a passenger with a disability to reschedule his or her trip, or travel at a time other than the time the passenger has requested, in order to receive transportation as required by this subpart;
.../
(e)  Fail or refuse to comply with any applicable provision of this part [Part 37].
49 C.F.R. § 37.207.

41.    Entities subject to the DOT regulations implementing Title III of the ADA[4] may also be subject to the DOJ regulations implementing Title III of the ADA,[5] and the two regulatory provisions should be interpreted in a consistent manner.  49 C.F.R. § 37.21; *see also* 49 C.F.R. Pt. 37, App. D ("Virtually all entities covered by this rule also are covered by DOJ rules ....  Both sets of rules apply; one does not override the other.")

### B.  The D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq*

42.    The Human Rights Act (DCHRA) was enacted in order to:

secure an end in the District of Columbia to discrimination for any reason other than that of individual merit, including, but not limited to, discrimination by reason of race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, familial status, family responsibilities, matriculation, political affiliation, genetic information, disability, source of income, and place of residence or business.
D.C. Code § 2-1401.01.

43.    The DCHRA prohibits discrimination against people with disabilities as follows:

§ 2-1402.31. Prohibitions.
(a) General. It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based on the actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, familial status,

---

[3] 49 C.F.R. § 37.5(h) allows transportation operators to refuse service to people with disabilities who engage in "violent, seriously disruptive, or illegal conduct."
[4] Codified at 49 C.F.R. Pt. 37.
[5] Codified at 28 C.F.R. Pt. 36.

family responsibilities, genetic information, disability, matriculation, political affiliation, source of income, or place of residence or business of any individual:
(1) To deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations[.]
D.C. Code § 2-1402.31(a)(1).

44.    The DCHRA's definition of "place of public accommodation" includes, *inter alia*:

[A]ll public conveyances operated on land or water or in the air, as well as the stations and terminals thereof; travel or tour advisory services, agencies or bureaus[.]
D.C. Code § 2-1401.02(24).

45.    Places of public accommodations are required to notify customers of their rights under the DCHRA and how to file a complaint:

§ 2-1402.51. Posting of notice.
Every person subject to this chapter shall post and keep posted in a conspicuous location where business or activity is customarily conducted or negotiated, a notice whose language and form has been prepared by the Office [of Human Rights], setting forth excerpts from or summaries of, the pertinent provisions of this chapter and information pertinent to the filing of a complaint.
D.C. Code § 2-1402.51.

## VI.  CAUSES OF ACTION

### COUNT I

**Defendants' Denial of Equal Access to Transportation Services Based on Disability Violates Title III of the ADA and the Implementing Regulations, 42 U.S.C. §§ 12181, 12182, 12184, 28 C.F.R. Pt. 36, 49 C.F.R. Pt. 37**

46.    Plaintiff repeats the allegations of all of the above paragraphs as if set forth fully herein for the purpose of stating this claim.

47.    Today's Bus and Wilcar Tours are public accommodations under Title III of the ADA.  42 U.S.C. § 12181(7); 28 C.F.R. § 36.104.

48.    Today's Bus and Wilcar Tours provide specified public transportation services under Title III of the ADA and the DOT implementing regulations.  42 U.S.C. § 12181(10); 49 C.F.R. § 37.3.

49.    As a person who is blind, Mr. Orozco has a physical impairment that substantially limits him in one or more of his major life activities and thus he is a person with a disability as defined by the ADA.  42 U.S.C. § 12102(2)(A).

50.    Mr. Orozco's dog Gator is a guide dog individually trained by The Seeing Eye, Inc., to work or perform tasks for an individual with a disability, and thus Gator is a service animal as defined by the ADA.  Mr. Orozco relies on his service animal to assist him on a daily basis in moving safely and independently through his surroundings.   49 C.F.R. § 37.3; 28 C.F.R. § 36.104.

51.    On December 31, 2006 and January 1, 2007, Defendants obstructed, harassed, and delayed Mr. Orozco, based on his disability, in his use of the transportation services provided by Defendants.  Defendants thereby denied Mr. Orozco equal access to transportation services that Defendants afforded to passengers without disabilities, in violation of Title III of the ADA. 42 U.S.C. §§ 12182, 12184; 28 C.F.R. Pt. 36; 49 C.F.R. Pt. 37.

52.    On January 1, 2007, Defendants prevented Mr. Orozco from boarding the bus for which he had bought a ticket because he was accompanied by his service animal.  By denying Mr. Orozco, on the basis of his disability, an equal opportunity to use the transportation services provided by Defendants, Defendants discriminated against Mr. Orozco in violation of Title III of the ADA. 42 U.S.C. §§ 12182, 12184; 28 C.F.R. Pt. 36;  49 C.F.R. Pt. 37.

53.    Mr. Orozco has suffered and continues to suffer injury from Defendants' discriminatory conduct denying him an equal opportunity to benefit from, and excluding him

from participation in, the transportation services provided by Defendants, based on his

disabilities, in violation of Title III of the ADA. 42 U.S.C. §§ 12182, 12184; 28 C.F.R. Pt. 36;

49 C.F.R. Pt. 37.

## COUNT II

**Defendants' Refusal to Modify Their Policy to Allow a Service Animal Violates Title III of the ADA and the Implementing Regulations, 42 U.S.C. §§ 12182, 12184, 28 C.F.R. Pt. 36, 49 C.F.R. Pt. 37**

54.    Plaintiff repeats the allegations of all of the above paragraphs as if set forth fully

herein for the purpose of stating this claim.

55.    By explicitly refusing to provide a reasonable modification in their "no dog"

policy in order to allow Mr. Orozco to board the bus accompanied by his service animal,

Defendants discriminated against Mr. Orozco based on his disability in violation of Title III of

the ADA. 42 U.S.C. §§ 12182(b)(2)(A)(ii), 12184(b)(2)(A); 28 C.F.R. §§ 36.104, 36.302(c); 49

C.F.R. §§ 37.3, 37.5(f), 37.167(d).

56.    Mr. Orozco has suffered and continues to suffer injury from Defendants'

discriminatory conduct that denied him an equal opportunity to benefit from, and excluded him

from participation in, the transportation services provided by Defendants, based on his

disabilities, in violation of Title III of the ADA. 42 U.S.C. §§ 12182, 12184; 28 C.F.R. Pt. 36;

49 C.F.R. Pt. 37.

## COUNT III

**Defendants' Segregation of Mr. Orozco Based on his Disability Violates Title III of the ADA and the Implementing Regulations, 42 U.S.C. §§ 12182, 12184, 28 C.F.R. Pt. 36, 49 C.F.R. Pt. 37**

57.    Plaintiff repeats the allegations of all of the above paragraphs as if set forth fully

herein for the purpose of stating this claim.

58.    On January 1, 2007, Defendants forced Mr. Orozco to sit at the back of the bus, based on his disability and use of a service animal, in order to be transported on the bus they operate. By restricting Mr. Orozco to a separate, designated seat in the rear of the bus based on his disability, even though all seats on the bus were available, Defendants segregated Mr. Orozco from the other passengers and thereby discriminated against him in violation of Title III of the ADA. 42 U.S.C. §§ 12182(b), 12184; 28 C.F.R. § 36.202(c); 49 C.F.R. § 37.5.

59.    Mr. Orozco has suffered and continues to suffer injury from Defendants' discriminatory conduct segregating him based on his disability, and denying him equal enjoyment of the transportation services provided by Defendants, in violation of Title III of the ADA. 42 U.S.C. §§ 12182, 12184; 28 C.F.R. Pt. 36; 49 C.F.R. Pt. 37.

## COUNT IV

**Defendants' Failure to Train Their Employees Not to Discriminate Against Persons with Disabilities Pursuant to ADA Requirements Violates Title III of the ADA and the Implementing Regulations, 42 U.S.C. § 12184, 49 C.F.R. Pt. 37**

60.    Plaintiff repeats the allegations of all of the above paragraphs as if set forth fully herein for the purpose of stating this claim.

61.    By denying Mr. Orozco equal access to the bus, and subjecting him to harassment and intimidation when he attempted to pursue his right to be accompanied by his service animal, Defendants have demonstrated that they failed to "ensure that personnel are trained to proficiency" as required by the ADA, so that personnel "safely and properly assist and treat individuals with disabilities who use the service in a respectful and courteous way," in violation of the ADA. 49 C.F.R. § 37.173.

62.    Mr. Orozco has suffered and continues to suffer injury from Defendants' failure to train their employees to grant equal access to persons with disabilities pursuant to the

18

requirements of the ADA and to treat individuals with disabilities who use their transportation service in a respectful and courteous manner. Defendants' failure to train their personnel has denied, and continues to deny Mr. Orozco equal enjoyment of the transportation services provided by Defendants, in violation of Title III of the ADA. 42 U.S.C. §§ 12182, 12184; 28 C.F.R. Pt. 36; 49 C.F.R. Pt. 37.

### COUNT V

**Defendants' Denial of the Mr. Orozco's Right to Equal Enjoyment of Their Transportation Services Based on Disability Violates the D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq***

63.     Plaintiff repeats the allegations of all of the above paragraphs as if set forth fully herein for the purpose of stating this claim.

64.     The public conveyances, stations, terminals and travel services operated by Today's Bus and Wilcar Tours are places of public accommodation under the DCHRA. D.C. Code § 2-1401.02(24).

65.     As a person who is blind, Mr. Orozco has a physical impairment that substantially limits him in one or more of his major life activities and thus he is a person with a disability as defined by the DCHRA. D.C. Code § 2-1401.02(5A).

66.     By interfering with Mr. Orozco's right to use Defendants' transportation services accompanied by his service animal and subjecting him to harassment and humiliation, Defendants have denied Mr. Orozco an equal opportunity to use the services they provide to the public. Defendants' denial of the full and equal enjoyment of the services of a place of public accommodation on the basis of disability is an unlawful discriminatory practice that violates the DCHRA. D.C. Code § 2-1402.31(a)(1).

67.    Mr. Orozco has suffered and continues to suffer injury from Defendants' discriminatory conduct that denies him an equal opportunity to benefit from the transportation services provided by Defendants, in violation of the DCHRA.

68.    Defendants' repeated incidents of purposeful discrimination against Mr. Orozco, as well as Defendants' persistent refusal to address Mr. Orozco's concerns regarding their discriminatory policy, show a wanton and willful disregard for Mr. Orozco's rights and protections against disability-based discrimination.

COUNT VI

**Defendants' Refusal to Modify Their Policy to Allow a Service Animal Violates the D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq***

69.    Plaintiff repeats the allegations of all of the above paragraphs as if set forth fully herein for the purpose of stating this claim.

70.    Defendants' failure to modify their "no dog" policy in order to allow Mr. Orozco to board the bus accompanied by his service animal denies Mr. Orozco the full and equal enjoyment of the transportation services provided by Defendants. The denial of the reasonable modification requested by Mr. Orozco therefore constitutes an unlawful discriminatory practice in violation of the DCHRA. D.C. Code § 2-1402.31(a)(1).

71.    Mr. Orozco has suffered and continues to suffer injury from Defendants' unlawful discriminatory practice denying him an equal opportunity to benefit from the transportation services provided by Defendants, in violation of the DCHRA.

72.    Defendants' repeated incidents of purposeful discrimination against Mr. Orozco, as well as Defendants' persistent refusal to address Mr. Orozco's concerns regarding their discriminatory policy, show a wanton and willful disregard for Mr. Orozco's rights and protections against disability-based discrimination.

## COUNT VII

**Defendants' Segregation of Mr. Orozco Based on his Disability Violates the D.C. Human Rights Act, D.C. Code § 2-1401.01 *et seq***

73.　　Plaintiff repeats the allegations of all of the above paragraphs as if set forth fully herein for the purpose of stating this claim.

74.　　Defendants have engaged in an unlawful discriminatory practice in violation of the DCHRA by forcing Mr. Orozco to ride in the back of the bus with his service animal and thereby treating him unequally as compared to passengers who do not have a disability. D.C. Code § 2-1402.31(a)(1).

75.　　Mr. Orozco has suffered and continues to suffer injury from Defendants' unlawful discriminatory practice denying him an equal opportunity to benefit from the transportation services provided by Defendants, in violation of the DCHRA.

76.　　Defendants' repeated incidents of purposeful discrimination against Mr. Orozco, as well as Defendants' persistent refusal to address Mr. Orozco's concerns regarding their discriminatory policy, show a wanton and willful disregard for Mr. Orozco's rights and protections against disability-based discrimination.

## COUNT VIII

**Defendants' Failure to Post a Notice of Passengers' Rights and Complaint Process Violates the D.C. Human Rights Act, D.C. Code § 2-1402.51**

77.　　Plaintiff repeats the allegations of all of the above paragraphs as if set forth fully herein for the purpose of stating this claim.

78.　　Defendants' failure to post a notice of passengers' rights and the complaint process as required by D.C. Code § 2-1402.51 violates the DCHRA.

79.    Mr. Orozco has suffered and continues to suffer injury from Defendants' failure to inform their employees and the public of their duty as a public accommodation to refrain from discrimination on the basis of disability, the right of the public to be free from such discrimination, and the complaint process, as provided by the DCHRA.

## VII.  RELIEF SOUGHT

80.    Mr. Orozco's claims under Title III of the ADA for injunctive relief for the discrimination he has suffered and continues to suffer in the provision of transportation services by Defendants, as well as payment of attorneys' fees and costs, are authorized by 42 U.S.C. §§ 12188(a), 2000a-3(a), and 12205.

81.    Mr. Orozco's claims under the DCHRA for injunctive relief and damages, as well as payment of attorneys' fees and costs, are authorized by D.C. Code § 2-1403.16.

82.    To remedy Defendants' violations of Plaintiff's federal civil rights and rights under the DCHRA, Plaintiff respectfully requests that the Court:

A.    Exercise jurisdiction over this matter;

B.    Issue a declaration and order stating that Defendants have violated Title III of the ADA, 42 U.S.C. §§ 12182, 12184, and the implementing regulations, and the DCHRA, D.C. Code § 2-1401.01 *et seq*;

C.    Enter an order for preliminary and permanent injunctive relief pursuant to 42 U.S.C. § 12188(a) and D.C. Code §§ 2-1403.16 and 2-1403.13(a)(1) to enjoin Defendants from discrimination against people with disabilities traveling with service animals and assure their compliance with the ADA, its implementing regulations, and the DCHRA, by ordering Defendants to:

i.  Develop policies and procedures that clearly prohibit discriminatory practices toward people with disabilities and sanction discriminatory behavior, including revising Today's Bus policy to clarify that service animals are allowed to accompany passengers with disabilities in stations and on buses provided and/or operated by Defendants, and submit the policies and procedures to the Court and Plaintiff's counsel;

ii.  Train all employees, station staff and bus drivers on ADA compliance, and specifically on the right of persons with disabilities to travel with their service animals, on buses engaged in providing transportation to the public, and submit curricula and signed certifications of attendance to the Court and Plaintiff's counsel;

iii.  Post signs in English, Spanish, and Chinese (and provide in Braille, upon request) in the stations and buses used by Today's Bus, notifying customers of their right to be free from disability discrimination and specifically notifying passengers with disabilities of their right to be accompanied by their service animals on the bus;

iv.  Provide a phone number and contact name on the Today's Bus website, on bus tickets, and on buses, for reporting disability discrimination complaints by Today's Bus customers, and act promptly to resolve such complaints in the future; and

v.  Issue a formal written apology to Plaintiff for the discrimination he experienced as a Today's Bus customer;

D.  Award Plaintiff compensatory damages of $50,000 in accordance with D.C. Code §§ 2-1403.16 and 2-1403.13(a)(1)(D);

E.  Award Plaintiff punitive damages of $100,000 in accordance with D.C. Code § 2-1403.16;

F.  Award Plaintiff reasonable attorneys' fees and costs in accordance with 42 U.S.C. § 12205 and D.C. Code §§ 2-1403.16 and 2-1403.13(a)(1)(E);

G.  Grant Plaintiff additional relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all counts.

Respectfully submitted,

_____
Amy B. Metzel, Esq. DC Bar No. 485614

_____
Marjorie Rifkin, Esq. DC Bar No. 437076

University Legal Services – Protection and Advocacy
220 I Street NE #130
Washington, DC  20002
202-547-0198 ext. 102 (Metzel); ext. 112 (Rifkin); 202-547-2662 (fax)
email: ametzel@uls-dc.org;  mrifkin@uls-dc.com

Date: _____3/7/07_____

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

### I (a) PLAINTIFFS

Jahinnslerth Orozco
1265 Newton Street, NE
Washington D.C. 20017

### DEFENDANTS

Today's Bus, Inc.
610 I St., NW
Washington D.C. 20001

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    D.C.
(EXCEPT IN U.S. PLAINTIFF CASES)    11001

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Amy Metzel, Esq.
University Legal Services
220 I St., NE #130
Washington, D.C. 20002
(202) 547-0198

CASE NUMBER 1:07CV00444

JUDGE: Emmet G. Sullivan

DECK TYPE: Civil Rights (non-employmen

DATE STAMP: 03/07/2007

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

- ○ A. Antitrust
- ○ B. Personal Injury

○ C. Administrative Agency Review

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

Court Name: District of Columbia
Division: 1
Receipt Number: 4616002732
Cashier ID: deallis
Transaction Date: 03/07/2007
Payer Name: UNIVERSITY LEGAL SERVICES IN
c

CIVIL FILING FEE
 UNIVERSITY LEGAL SERVICES INC
Amount:    $350.00

CASH
Amt Tendered: $200.00
CHECK
Check/Money Order Num: 8957
Amt Tendered: $150.00

Total Due:    $350.00
Total Tendered: $350.00
Change Amt:    $0.00

07-0444

Only when the bank clears the
check, money order, or verifies
credit of funds, is the fee or debt
officially paid or discharged. A
$45 fee will be charged for a
returned check.

○ F. Pro Se General Civil

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

USC 158
al 28 USC 157

nalty
us & Other
hts
ondition

hts

ark

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 870 T.. IS plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

5

| ○ G. Habeas Corpus/ 2255 | ○ H. Employment Discrimination | ○ I. FOIA/PRIVACY ACT | ○ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. Labor/ERISA (non-employment) | ○ L. Other Civil Rights (non-employment) | ○ M. Contract | ○ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☒ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

Blind Plaintiff with service animal files a complaint under 42 U.S.C. 12181 et seq. because Defendants denied him access to transportation.

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    DEMAND $ 150,000   Check YES only if demanded in complaint   JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE 03/07/2007    SIGNATURE OF ATTORNEY OF RECORD  Amy B. Mehta

JK

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.